**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARVIN C. LITTLE, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Civil Action No. 19-2866 (RC) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

Marvin C. Little ("Petitioner"), who is serving a prison sentence imposed by the Superior Court of the District of Columbia, appears to have raised every conceivable claim in his years-long effort to overturn his criminal convictions. This matter is before the Court on Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1, "Pet."), as supplemented and amended (ECF Nos. 4 ("Supp. Pet."), 9 ("Mot. Am. Pet."), 15 ("Am. Pet."), 18, 20, 24, 33 and 40), Respondent's Opposition to Petitioner's *Pro Se* Petition for a Writ of Habeas Corpus (ECF No. 34, "Resp. Opp'n"), and Petitioner's Motion to Reply to the Government's Response to Petitioner's Motion to Vacate[,] [and] Set Aside His Conviction and Sentence 28 U.S.C. 2254 and Motion to Amends [sic] and Exhibits (ECF No. 38, "Reply").[1] For the reasons discussed below, the Court DENIES the petition.

**I. LEGAL STANDARDS**

    **A. D.C. Code § 23-110**

Ordinarily, a person convicted in and sentenced by the Superior Court would seek post-conviction relief by motion under D.C. Code § 23-110, which in part provides:

---

[1] Unless otherwise indicated, page numbers are those designated by CM/ECF.

> A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.

D.C. Code § 23-110(a). "Section 23-110 . . . gives the [S]uperior [C]ourt exclusive jurisdiction of virtually all collateral challenges," *Head v. Wilson*, 792 F.3d 102, 104 (D.C. Cir. 2015), and only under limited circumstances may a D.C. Code offender obtain habeas relief in federal court:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code § 23-110(g); *see Garris v. Lindsay*, 794 F.2d 722, 727 (D.C. Cir.), *cert. denied*, 479 U.S. 993 (1986).

Matters such as trial court errors and ineffective assistance of trial counsel are proper fodder for a § 23-110 motion. *See, e.g., McNair v. U.S. Parole Comm'n*, No. 17-CV-0404, 2019 WL 1082160, at *5 (D.D.C. Mar. 7, 2019) (dismissing claims of ineffective assistance of trial counsel, prosecutorial misconduct, and trial court error, which petitioner could have brought under § 23-110); *Rahim v. U.S. Parole Comm'n*, 77 F. Supp. 3d 140, 146 (D.D.C. 2015) (remarking that ineffective assistance of trial counsel is a claim "routinely brought pursuant to § 23-110"). And "if an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a

2

barrier to [the Court of Appeals'] consideration of appellant's claim." *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987).

An ineffective assistance of appellate counsel ("IAAC") claim is beyond the scope of § 23-110. *Streater v. United States*, 429 A.2d 173, 174 (D.C. 1980) (concluding that "Section 23-110 provides no basis upon which the trial court may review appellate proceedings," and IAAC claim is "not within the purview of [§] 23-110"). Rather, an IAAC claim is presented directly to the District of Columbia Court of Appeals by motion to recall the mandate. *Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc). And "D.C. prisoners who challenge the effectiveness of appellate counsel through a motion to recall the mandate in the D.C. Court of Appeals will get a second bite at the apple in federal court." *Williams v. Martinez*, 586 F.3d 995, 1000 (D.C. Cir. 2009).

### B. 28 U.S.C. § 2254

A State prisoner may seek habeas relief in federal court if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). For purposes of Section 2254, District of Columbia courts are State courts. *See Head*, 792 F.3d at 106 n.3.

The statute contemplates that a petitioner would have raised his claims in State court before resorting to a federal court for relief. *See* 28 U.S.C. § 2254(b)(1)(A). Section 2254 further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). It is no easy task to satisfy Section 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) (remarking that § 2254(d) standard is "difficult to meet"). The federal district court's review is highly deferential, *see Waters v. Lockett*, 896 F.3d 559, 566 (D.C. Cir. 2018), and "state-court decisions [are] given the benefit of the doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted). Even if the State court sets forth no explanation for its ruling, a petitioner still must "show[] there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

### C. Ineffective Assistance of Appellate Counsel Claims

To prevail on an IAAC claim, a petitioner must show that appellate counsel's performance not only was deficient but also prejudiced his case on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland* standard to IAAC claim). The former element requires a petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To this end, a petitioner must show "that counsel made errors so serious that

4

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  The latter element requires a petitioner to "show . . . there is a reasonable probability that, but for [appellate] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*  The Court need not address both elements of the *Strickland* inquiry if a petitioner makes an insufficient showing on either element.  *See id.* at 697.

## II. BACKGROUND

The Court presumes that the parties are familiar with Petitioner's criminal offenses, which the District of Columbia Court of Appeals has described in detail.  *See generally* Resp. Opp'n, Ex. 3 (Mandate, *Little v. United States*, No. 06-CF-000140 (D.C. Ct. App. Sept. 23, 2010)) at 4-8.[2]  For purposes of this Memorandum Opinion, it suffices to say that, on February 4, 2004, Petitioner and three accomplices entered the residence of Michael Richardson without invitation, robbed and assaulted Richardson and his guest Slavko Totev, and in the course of the encounter, an accomplice shot Richardson in the face and Petitioner cut Totev's throat.  *See* Mandate at 4-6.  Petitioner, who claimed to have been Richardson's guest and a third victim of the incident, was arrested on February 26, 2004.  *Id.* at 8.  His accomplices were not arrested or prosecuted.  *See* Supp. Pet. at 9.

A jury found Petitioner guilty of the following offenses:

- Possession of a firearm during a crime of violence ("PFCV") (Counts E, G, K)
- Aggravated assault while armed ("AAWA") (Counts F, I)
- Armed robbery ("AR") (Count J)

---

[2] Respondent submits a copy of the Mandate, *see* Resp. Opp'n, Ex. 3, and this Court refers to it by the page numbers CM/ECF designated, rather than the reported opinion, *see Little v. United States*, 989 A.2d 1098 (D.C. 2010).

- Carrying a pistol without a license ("CPWL") (Count L)
- Possession of an unregistered firearm ("UF") (Count M)
- Unlawful possession of ammunition ("UA") (Count N)
- Assault with a dangerous weapon ("ADW") (Counts O and P)

*See* Resp. Opp'n, Ex. 2 (Judgment in a Criminal Case (Amended), *United States v. Little*, No. F-1292-04 (D.C. Super. Ct. Mar. 24, 2006)) at 1.  The Superior Court imposed an aggregate prison term of 83 years and two months.  *See id.*, Ex. 2 at 1.

Petitioner, then represented by appointed counsel, filed a direct appeal raising three claims: (1) the statutes underpinning the firearms offenses (CPWL, UF and UA) violated Petitioner's Second Amendment rights; (2) the trial court gave the jury an aiding and abetting instruction contrary to the Court of Appeals ruling in *Wilson-Bey v. United States*, 903 A.2d 818 (D.C. 2006) ("*Wilson-Bey* argument"); and (3) the trial court violated Petitioner's rights under the Sixth Amendment's Confrontation Clause by admitting into evidence "certificates of no record" of firearms registration and license to carry a pistol.  *See* Mandate at 4.  The Court of Appeals affirmed all of Petitioner's convictions on February 25, 2010, and issued its Mandate on September 23, 2010.  *See generally* Mandate.

Proceeding *pro se*, on April 29, 2010, Petitioner filed a motion for rehearing or rehearing *en banc*.  *See generally* Resp. Opp'n, Ex 4 (Petition for Rehearing/Rehearing En Banc, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. Apr. 29, 2010)).  He argued that trial counsel was ineffective for failing use a peremptory challenge to remove a biased juror.  Further, he argued that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel claims.  According to Petitioner, trial counsel erred when he failed to move to suppress evidence, failed to address *Miranda* and *Brady* violations, failed to move to suppress victims' identification testimony, and failed to object to the prosecutor's opening and closing statements.  Petitioner

6

expanded on these arguments in a supplemental motion, contending that more allegedly biased jurors were seated and that appellate counsel challenged an aiding and abetting instruction notwithstanding Petitioner's objection to the argument. *See generally* Resp. Opp'n, Ex. 5 (Supplemental Motion to Correct Previous File Petition for Rehearing/Rehearing En Banc, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. May 10, 2010)). The Court of Appeals denied the motion. *See id.*, Ex. 6 (Order, *Little v. United States* No. 06-CF-140 (D.C. Ct. App. Sept. 15, 2010)).

Undaunted, proceeding *pro se*, Petitioner filed a motion to recall the mandate, *see generally* Resp. Opp'n, Ex. 7 (Motion to Recall the Mandate in Support of Motion Appendix Exhibits, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. Dec. 16, 2010)) ("Recall Mot."), arguing that appellate counsel rendered ineffective assistance when he:

- failed to file a § 23-110 motion in the Superior Court on Petitioner's behalf
- raised *Wilson-Bey* argument that the trial judge gave the jury an erroneous aiding and abetting instruction
- failed to challenge on direct appeal the sufficiency of the evidence against Petitioner and the manner in which certain evidence was obtained
- failed to raise on direct appeal a prosecutorial misconduct claim arising from the government's alleged failure to produce *Brady* material
- failed to raise on direct appeal ineffective assistance of trial counsel claims that counsel did not move to strike biased jurors and that counsel informed the jury that Petitioner was on parole

*See generally* Recall Mot. The Court of Appeals denied the motion, explaining:

> Appellate counsel properly advised appellant of his right to file a *pro se* D.C. Code § 23-110 motion during the pendency of the appeal and appellant elected not to file the motion in order to preserve his claims. Pursuant to *Doe v. United States*, 583 A.2d 670 (D.C. 1990) and *Shepard v. United States*, 533 A.2d 1278 (D.C. 1987)[,] appellate counsel is only required to investigate the validity of an ineffective assistance claim, and only after concluding that a valid claim exists shall counsel notify appellant of the results and file the motion in the trial court.

Resp. Opp'n, Ex. 8 (Order, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. Apr. 5, 2011) (per curiam)).

Petitioner filed the first of two motions to reconsider on May 2, 2011, arguing again that appellate counsel rendered ineffective assistance. *See generally id.*, Ex. 10 (Motion for Reconsideration to Recall the Mandate, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. May 10, 2011)). The Court of Appeals denied the motion on May 23, 2011. *See id.*, Ex. 11 (Order, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. May 23, 2011)). Petitioner's second motion to reconsider disputed the Court of Appeals' version of the facts, particularly those regarding Richardson's and Totev's identification of Petitioner as the perpetrator. *See generally id.*, Ex. 12 (Motion for Leave Requesting Reconsideration of the Court's Order Rejecting the Defendant's Motion to Show Cause and Prejudice, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. Sept. 26, 2012)). The Court of Appeals denied reconsideration, stating:

> Appellate counsel is not required to raise every issue requested by appellant. *See Stratmon v. United States*, 631 A.2d 1177, 1183 (D.C. 1993). Part of this court's role in reviewing a claim of ineffective assistance of appellate counsel is to determine whether the failure to raise the issue cited by appellant "was sufficiently egregious and prejudicial" to hold that counsel's performance "fell below an objective standard of reasonableness["] established in *Strickland v. Washington*, 466 U.S. 688, 689 (1984). *See Stratmon* at 1183. In this instance, appellant's argument regarding counsel's failure to raise an issue of misidentification in his brief lacks support in the record and, based upon the evidence presented at trial, does not demonstrate that counsel's decision was egregious or prejudicial.

*Id.*, Ex. 13 (Order, *Little v. United States*, No. 06-CF-140 (D.C. Ct. App. Nov. 27, 2012) (per curiam)).

Meanwhile, in the Superior Court, Petitioner filed a *pro se* "Motion to Correct Unconstitutional and Excessive Sentence" on August 29, 2011, and a "Motion to Recuse and

Vacate and Set Aside Conviction" on March 5, 2012.  *See* Resp. Opp'n at 10.  With respect to the former motion, the government conceded that the sentences imposed for ADW and AAWA merge.  *See id.*  The trial court vacated two ADW convictions and a related PFCV conviction, and on August 3, 2012, issued a new Judgment and Commitment Order imposing an aggregate prison sentence of 59 years and 8 months.  *See id.*  The latter motion, which sought the trial judge's recusal for alleged bias, was denied.  *See id.*

On November 12, 2012, Petitioner filed *pro se* a motion under D.C. Code § 23-110 in Superior Court.  *See* Resp. Opp'n at 11.  The motion was denied, and Petitioner appealed.  *See id.*  The Court of Appeals summarized Petitioner's claims as follows:

> (1) the evidence at trial was insufficient to support his convictions because it failed to establish that the victims of the assaults suffered serious bodily injury; (2) the trial court committed plain error in admitting a knife identified as having been used in the commission of the charged offenses; (3) the prosecution violated its obligations under *Brady v. Maryland* by failing to turn over a police officer's alleged interview notes and a witness's immunity agreement; (4) the aiding and abetting instruction given with respect to the charged weapons offenses was plainly erroneous; and (5) the government violated its obligation under *Napue v. Illinois* to correct testimony known to be false when it allowed three prosecution witnesses to provide conflicting testimony.

Resp. Opp'n, Ex. 14 (Memorandum Opinion and Judgment, *Little v. United States*, No. 15-CO-729 (D.C. Ct. App. Oct. 12, 2016) (per curiam)) at 2 (footnotes omitted).  The Court of Appeals noted that "[t]hese claims are all predicated on the trial record and were available for [Petitioner] to raise on direct appeal," yet Petitioner raised only one, the *Wilson-Bey* argument.  *Id.*, Ex. 14 at 2.  The Court of Appeals found Petitioner had "identified no reason he was unable to raise any of the foregoing claims on direct appeal, other than his assertion that his appellate counsel (who was not his trial counsel) was ineffective for failing to do so."  *Id.*, Ex. 14 at 2-3.  It affirmed the Superior Court's decision and, regarding ineffective assistance of counsel claims, explained:

9

> [Petitioner's] brief in the present appeal raises ineffective assistance of his trial and appellate counsel as independent grounds for granting him relief from his convictions (and not simply as cause for his failure to raise his other claims on direct appeal). Because he did not present these claims for relief to the trial court in his § 23-110 motion, they are not properly before us. In any event, they are procedurally barred for the reasons already identified: [Petitioner] has not shown cause for his failure to raise ineffective assistance of trial counsel during the pendency of his direct appeal; ineffective assistance of appellate counsel may not be asserted in a § 23-110 motion or on appeal from the denial of such a motion; and this court has already rejected appellant's motion to recall the mandate to allow him to proceed with a claim of ineffective assistance of appellate counsel.

*Id.*, Ex. 14 at 3 (footnotes omitted). Plaintiff unsuccessfully sought to recall this Court of Appeals mandate. *See* Resp. Opp'n, Ex. 15 (Order, *Little v. United States*, No. 15-CO-729 (D.C. Ct. App. May 1, 2017) (per curiam)). Petitioner's third collateral attack likewise was unsuccessful. *See generally id.*, Ex. 16 (Mandate, *Little v. United States*, No. 18-CO-640 (D.C. Ct. App. June 27, 2019) (per curiam)).

### III. DISCUSSION

#### A. IAAC Claims Before the Court of Appeals

Certain of Petitioner's myriad claims were presented to and resolved by the Court of Appeals on the motion to recall the mandate which, as stated above, is the appropriate vehicle for adjudication of IAAC claims. *See Watson*, 536 A.2d at 1060.

On review of the motion to recall the mandate, Petitioner's claims fall into three categories: (1) appellate counsel failed to file a § 23-110 motion in Superior Court on Petitioner's behalf; (2) appellate counsel argued on direct appeal, contrary to Petitioner's wishes, that the trial court gave the jury an erroneous aiding and abetting instruction; and (3) appellate counsel failed to raise all of the claims Petitioner wanted to raise on direct appeal. *See generally*

Recall Mot. at 4-16. The third category includes claims that appellate counsel was ineffective for failing to challenge the sufficiency of evidence introduced at trial, *see id.* at 6-8, for failing to raise ineffective assistance of trial counsel claims on direct appeal, *see id.* at 9 (regarding *Miranda* violation), 10 (regarding Richardson's and Totev's identification testimony), for failing to raise a prosecutorial misconduct claim, *see id.* at 12-13, for failing to move to strike biased jurors, *see id.* at 14-15, and for informing the jury that Petitioner was on parole when the robbery occurred, *see id.* at 16.

As to the these claims, habeas relief is warranted if the Court of Appeals either rendered a decision "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or . . . was based on an unreasonable determination of the facts in light of the evidence presented" in its proceedings. 28 U.S.C. § 2254(d). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not "whether . . . counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. Petitioner fails to meet his burden.

### 1. § 23-110 Motion

Petitioner argued to the Court of Appeals and repeats here that appellate counsel was ineffective for failing to file a § 23-110 motion in the Superior Court raising, among other claims, ineffective assistance of trial counsel. *See* Pet. at 7; Supp. Pet. at 13; *see generally* Am. Pet. at 2-7. The IAAC claim on this ground proceeds no further.

First, Petitioner "lack[s] a constitutional entitlement to effective assistance of counsel in state collateral proceedings[.]" *Williams v. Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)); *see Johnson v. Stansberry*, No. 10-

CV-178, 2010 WL 358521, at *1 (D.D.C. Jan. 29, 2010) (dismissing with prejudice "claim of ineffective assistance of appellate counsel for failing to assist [petitioner] on his § 23–110 motion . . . for failure to state a claim upon which relief may be granted").

Second, Petitioner's own exhibits demonstrate, as Respondent sets forth in some detail, *see generally* Resp. Opp'n at 18-20, that appellate counsel actually considered – and rejected – Petitioner's proffered arguments. For example, appellate counsel's January 10, 2008, letter to Petitioner advised:

> As to general procedure, I have been appointed to handle your direct appeal. This includes determining of a motion under §23-110 is appropriate, and if so, writing and filing one. In turn, this includes, considering not only what you suggest but also what I see independently. For example, I think the failure to make the *Wilson-Bey* argument should be raised. Similarly, I am carefully considering the issue that you suggest amounted to ineffectiveness. The bottom line is that you are not entitled to a §23-110 by itself unless I think it is appropriate and I am not required to include in such a motion everything that you say.

Pet., Ex. 3 (ECF No. 1-1) at 6. Appellate counsel went on to write:

> Only certain things amount to winnable claims of ineffective assistance of counsel. Basically, the courts give a wide berth to trial lawyers. In hindsight, it may be that things should have been done differently. Every trial lawyer who has lost a case knows this (personally, I have both won and lost cases; years later 1 am still thinking about what I should have done in certain cases that I lost; of course, I never think this as to cases I won although I am sure I made mistakes in them too). As the courts have made clear, though, the question is whether any attorney would have reasonably made a particular decision. Take investigation. It is not reasonable to not investigate but to not find or present particular witnesses may be reasonable. A lawyer may decide - rightly or wrongly, but with at least one reason - not to emphasize certain things because, for example, that emphasis risks more than will be gained (this is a guess but one the courts entrust to trial lawyers).
>
> What I suggest is this: for things that you feel strongly about but I don't, you should file the § 23-110. That way, you get to preserve the arguments (if I file on *Wilson-Bey* for example, you

> might well be precluded from unmade arguments - this rule might or might not apply to arguments based on a change in the law - the law has been very unclear on this for the last 20 or so years). Procedurally, what I think should happen is that you should file first and then I will "supplement" your motion. It should happen this way because if I file first, a court might reject your papers out-of-hand in the belief that you already have a lawyer so too bad; this should not happen if I supplement, even if it is the same motion that I would have filed anyway.

Recall Mot. at 23.[3] Petitioner did not follow appellate counsel's advice by filing his own § 23-110 motion *pro se*.

"[A]ppointed counsel on direct appeal is obliged to make reasonable inquiry into the possibility of ineffective assistance of counsel at trial by researching and developing points thus uncovered that might give rise to a claim of ineffectiveness." *Doe v. United States*, 583 A.2d 670, 675 (D.C. 1990); *see id.* at 674 ("[A]n inherent part of counsel's responsibility on direct appeal is to consider whether the client's interests require the filing of a motion under § 23–110 based on ineffectiveness of counsel[.]"). It appears, then, that appellate counsel fulfilled his obligations, and declined to pursue claims suggested by Petitioner "for which [counsel] could not find support." Recall Mot. at 30.

Third, Petitioner does not demonstrate that the Court of Appeals' decision either was contrary to established constitutional law or was based on unreasonable determination of the facts in light of the evidence presented to it. Petitioner's motion to recall the mandate essentially is a general complaint that appellate counsel refused to file a § 23-110 motion in Superior Court raising claims regarding trial court error and trial counsel's performance, and the Court of Appeals reasonably concluded that appellate counsel assessed the viability of Petitioner's

---

[3] The January 10, 2008, letter was at least two pages long. Petitioner provided just the first page as an exhibit to his original habeas petition, and Respondent submitted the first and second pages of the letter.

suggested arguments, advised Petitioner consistent with *Doe* and *Shepard*, and thus afforded Petitioner an opportunity to preserve his claims on his own.

### 2. Arguments Raised – or not – on Direct Appeal

Petitioner proceeds under the mistaken impression that appointed appellate counsel was obliged to raise only those issues Petitioner chooses to present on direct appeal. No Supreme Court decision "suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Instead, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (citations omitted); *Stratmon*, 631 A.2d at 1183. "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila*, 137 S. Ct. at 2067 (citing *Robbins*, 528 U.S. at 288).

#### a. *Wilson-Bey* Argument

"The government tried [Petitioner] as the principal, but requested that the trial court give an aiding and abetting instruction because there were three other men who participated in the robbery who might be considered principals." Mandate at 11. At the time of Petitioner's trial, the standard jury instruction included the following language:

> [a]n aider and abettor is legally responsible for the acts of other persons that are the *natural and probable consequence* of the crime in which he intentionally participates. An aider and abettor is legally responsible for the principal's use of a weapon during an offense if the aider and abettor had actual knowledge that some type of weapon would be used or if it was reasonably foreseeable to the aider and

> abettor that some type of weapon was required to commit the offense.

Mandate at 14 (emphasis in original). The Court of Appeals later "rejected the use of the 'natural and probable consequence' language in the aiding and abetting instruction for . . . so-called 'specific intent crimes.'" *Id.* (quoting *Wilson-Bey*, 903 A.2d 818 at 834, 837) (additional citation omitted). Rather, the Court of Appeals "adopted the doctrine that 'in order for a person to be held accountable for the specific intent of another under an aiding and abetting theory of principal liability, the aider and abettor must have knowingly aided the other person with the intent that the other person commit the charged crime.'" *Id.* at 14-15 (quoting *Wilson-Bey*, 903 A.2d at 834) (internal quotation marks and citation omitted). Given the evidence presented at trial, the Court of Appeals found that "any reasonable juror who credited the government's evidence would have concluded that [Petitioner] acted as a principal or with the same intent as the principal(s)," such that Petitioner's "substantial rights were not affected as a result of the erroneous aiding and abetting jury instruction." *Id.* at 16.

According to Petitioner, by making the *Wilson-Bey* argument, appellate counsel essentially concedes Petitioner's knowledge of or participation in the robbery and related offenses, *see* Recall Mot. at 5; Supp. Mot. for Rehearing 34-5 at 5, contrary to Petitioner's assertion he was Richardson's guest and a third victim of armed robbery and assault, *see* Mandate at 8.

Appellate counsel considered the *Wilson-Bey* argument the strongest. In his May 17, 2007, letter to Petitioner, appellate counsel wrote:

> In terms of issues, I think it all comes down to *Wilson-Bey* and the aiding/abetting instruction. By far, this is the most important issue in your case. Also, it is a relatively "hot" issue right now for those cases, like yours, that were on direct appeal when *Wilson Bey* was

15

> decided. In any event, were we to entirely win on this point, every
> charge would be reversed.

Recall Mot. at 33. Likewise, to the extent appellate counsel felt there was a viable issue for a § 23-110 motion, "[a]s to the effectiveness of [trial counsel] . . . the main issue . . . is the failure to object to the aiding and abetting instruction." *Id.* Thus, counsel argued on direct appeal that the erroneous aiding and abetting instruction would "warrant[] reversal of all of [Petitioner's] convictions – AR, PFCV, CPWL, UF, UA, AAWA, and ADW." Mandate at 13. For this reason, applying *Strickland*, the Court of Appeals would have had a reasonable basis to deny Petitioner relief, as making the *Wilson-Bey* argument would not amount to ineffective assistance of appellate counsel.

### b. Arguments Appellate Counsel Declined to Raise on Direct Appeal

On review of the record, appellate counsel considered Petitioner's suggested claims and declined to bring claims for which he found insufficient support. For example, among Petitioner's exhibits is correspondence reflecting appellate counsel's consideration of an argument regarding biased jurors. *See* Recall Mot. at 52 (stating that, having "review[ed] (twice) the jury selection transcript" and "the transcript regarding #169 three times I do not think it raises any appeal issues"). In another example, regarding trial counsel's failure to move to suppress Petitioner's videotaped statement to police, appellate counsel wrote:

> Assuming that [trial counsel] should have filed a suppression motion and there should have been a suppression hearing, the question is whether it mattered. Best case: A suppression motion and hearing would [have] resulted in the prosecutor not being able to use the videotaped statement unless you testified. Thus, even assuming that the failure to move to suppress the statement was ineffective, the courts will only rule in your favor now if this resulted to "prejudice" to your case. The problem is that it did not.

Mot. Am. Pet., Ex. F2 (ECF No. 9-1) at 3.

There is a reasonable basis for the Court of Appeals, applying *Strickland*, to have denied Petitioner relief.  The record shows that appellate counsel considered Petitioner's suggested arguments for direct appeal and presented Petitioner valid reasons for rejecting them, and by doing so, did not render ineffective assistance.

### C. Claims *Not* Presented to the Court of Appeals in Motion to Recall Mandate

The remainder of the claims had not been brought before the Court of Appeals, thus depriving it of an opportunity to consider matters purportedly supporting Petitioner's IAAC claims.  Generally, this Court cannot consider these unexhausted claims.  *See Gorbey v. United States*, 55 F. Supp. 3d 98, 106 (D.D.C. 2014) (concluding petitioner did not exhaust remedies because his motion to recall Court of Appeals mandate did not include claim presented in federal district court); *Mackall v. Wilson*, 32 F. Supp. 3d 76, 80 (D.D.C. 2014) (granting respondent's motion to dismiss § 2254 petition because petitioner failed to exhaust underlying IAAC claim based "on wholly different issues that were not presented to the [Court of Appeals]" in motion to recall mandate).  In other words, Petitioner faces a procedural bar, which he might overcome by "demonstrat[ing] cause for his state-court default . . . and prejudice therefrom[.]" *Evans v. United States*, No. 17-CV-1731, 2020 WL 3250730, at *5 (D.D.C.  June 15, 2020) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)).

To demonstrate cause, a petitioner can show that "some objective factor external to the defense" prevented him from raising a claim in State court. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citation and internal quotation marks omitted).  The Court has reviewed Petitioner's submissions, and finds them woefully lacking on this point.  Petitioner points generally to his lack of education and legal training, the Court of Appeals' refusal to appoint counsel to represent him on the motion to recall the mandate, and appellate counsel's ineffectiveness, plus his diligent

17

efforts to pursue his claims to the best of his ability.  *See, e.g.*, Reply at 6 ("DCCA officials was the ones who denied him the opportunity to raise . . . claims by not granting him a[n] attorney to help him"), 8 (noting that Petitioner was "doing the best he can with a fifth (5th) grade education, and that he knew nothing about the law"), 12 (asserting "that his appellate counsel was ineffective, because of the most important issues counsel choosed [sic] to leave out").  Assertions of this nature do not demonstrate cause.  Petitioner does not, for example, demonstrate that government officials interfered with his efforts to comply with relevant rules and legal requirements.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (noting that "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard").

Alternatively, Petitioner might overcome procedural default by showing that "failure to consider the claim[] will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  Merely asserting that his rights were violated, *see* Reply at 6, 12, does not demonstrate that refusal to entertain his claims at this late date results in a miscarriage of justice.  And arguing that, had appellate counsel raised the desired claims on direct appeal, there was a probability that the outcome of his appeal would have been different, *see id.* at 7, is mere speculation.  Every basis for a potential IAAC claim was known to Petitioner when he sought recall of the Court of Appeals mandate.  Even if Petitioner were able to show cause, given the "overwhelming evidence" of his guilt, Mandate at 15, Petitioner fails to demonstrate that the outcome of the

appeal would have been different.

## III. CONCLUSION

Petitioner has not shown that the District of Columbia courts' application of the *Strickland* standard was unreasonable with respect to the claims before it on the motion to recall its mandate. Nor has Petitioner demonstrated cause for failure to present claims of which he was aware when seeking to recall the Court of Appeals mandate and prejudice if his claims were not addressed in this Court. Therefore, the petition will be denied. An Order is issued separately.

DATE: September 4, 2022                                   RUDOLPH CONTRERAS
                                                                                  United States District Judge